1    Joshua R. Stickell, Esq. (NY SBN # 6254437)
2    Rivera Julka Law Group, PC.
     17 W. Main Street,
3    Bay Shore, NY 11706
     Telephone: (631) 647-9040
4    Email: joshua@riverajulka.com
     *Counsel for Petitioner*
5

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

6

7

8    AMADOR ALDANA, Aurelio
     Alien #241-102-170,
9
                                                              Case No.
              Petitioner,
10                    v.

11   PAMELA BONDI, in her official capacity as Attorney          **PETITION FOR WRIT OF**
12   General,                                                    **HABEAS CORPUS**

13   KRISTI NOEM, in her official capacity as Secretary of
     the Department of Homeland Security,
14

15   U.S. DEPARTMENT OF HOMELAND SECURITY,

16   JOSEPH CARDINALE, in his official capacity as Acting
     Field Office Director of the New York Field Office for
17   U.S. Immigration and Customs Enforcement,

18   TODD LYONS, in his official capacity as Acting ICE
19   Field Office Director,
              Respondents.

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

603 U.S. 369, 395, 401 (2024). .......................................................................................... 16

*Almeida-Amaral v. Gonzales*, 461 F.3d 231 (2nd Cir. 2006). ......................................... 10

*Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025) ........................ 7

*Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) ....................................................... 4

*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) ........................................................... 8, 9

*Chipantiza-Sisalema v. Francis*, 2025 WL 1927931 (S.D.N.Y. July 13, 2025) ........................... 25

*City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) ........................................................ 8

*Cotzojay v. Holder*, No. 11-4916 (2d Cir. 2013) ...................................................... 10, 20

*Demore v. Kim*, 538 U.S. 510, 523 (2003) ...................................................................... 10

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016) ...................................... 19

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ............................................... 19

*Gallegos v. Haggerty*, 689 F.Supp. 93 (N.D.N.Y. Apr. 12, 1988) .................................... 10

*Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025) ............... 7, 11

*I.N.S. v. Delgado*, 466 U.S. 210, 235 (1984) .................................................................. 10

*J.U. v. Maldonado,* No.25-CV-04836, 2025 WL 2772765 3* (E.D.N.Y. Sept. 29, 2025)....4, 7, 13

*Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) .............................................. 7, 12, 14, 22

*Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025)........................................................................................................... 7, 15

*Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).......................................................................................................... 2, 15, 18

Mathews v. Eldridge........................................................................................ 11, 21, 22, 24

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025) .................................... 2, 4, 9

*Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) ................................ 18, 20

*Munaf v. Geren*, 553 U.S. 674, 693 (2008) .............................................................. 23, 25

*Nat. Res. Def. Council, Inc. v. FAA*, 564 F.3d 549 (2d Cir. 2009)................................ 19

*Nevarez Jurado v. Freden*, No. 25-cv-943-LJV, 2025 WL 3687264 (W.D.N.Y. Dec. 19, 2025) ...7

No. 25-CV-6336, 2025 WL 3277677, 4*(E.D.N.Y. Nov. 25, 2025) ........................................... 13

No. 25-CV-7233, 2025 WL 3040142, 4* (S.D.N.Y. Oct. 28, 2025) ......................................... 14

*O-J-M- v. Bostock*, 2025 WL 1943008, at *1 (D. Or. July 14, 2025) ..................................... 25

*Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) ................................................... 23, 25

*Quintanilla v. Decker*, No. 1:2021-cv-00417, Doc. 12 at 3 (S.D.N.Y. Feb 22, 2021) .................... 4

*Reno v. Flores*, 507 U.S. 292, 306 (1993) ............................................................ 10

*Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004) ..................................................... 4

*Sarmiento Guerrero v. Noem*, No. 25-CV-5881, 2025 WL 3214787 (E.D.N.Y. Nov.18, 2025) ...7, 14

*U.S. v. Kone*, 591 F.Supp.2d 593, 604-605 (S.D.N.Y. Nov. 5, 2008) ..................................... 9

*U.S. v. St. Kitts*, 742 F.Supp. 1218 (W.D.N.Y. Aug. 23, 1990) ........................................ 10

*Ulloa Montoya v. Bondi*, No. 25-CV-06363, 2025 WL 3718694 (E.D.N.Y. Dec. 23, 2025) ....7, 25

*United States v. MacDonald,* 916 F.2d 766, 769 (2d Cir. 1990) ........................................ 9

*United States v. Vasquez,* 638 F.2D 507, 520 (2d. Cir. 1980) ......................................... 20

*Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 327 (2014) ........................................ 17

*Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) ............................................ 3, 11, 23

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ...................................................passim

**Statutes**

8 U.S.C. § 1103(a) ..................................................................................... 5

8 U.S.C. § 1226 ....................................................................................... 5

8 U.S.C. § 1226(c) ................................................................................... 13

8 U.S.C. § 1225(a) .................................................................................... 6

28 U.S.C. § 1331 ...................................................................................... 3

28 U.S.C. § 2241 ................................................................................... 1, 3

28 U.S.C. § 2243 ..................................................................................... 24

5 U.S.C. § 706 ........................................................................................ 8

5 U.S.C. § 706(2)(A) ................................................................................ 17, 18, 19, 20

5 U.S.C. § 706(2)(C) .......................................................................................... 8, 17

5 U.S.C. §§ 551–706 ................................................................................................. 8

8 U.S.C. § 1225(b)(2)(A) ................................................................................ passim

8 U.S.C. § 1226(a) ............................................................................................ 2, 15

U.S.C. § 2243 ........................................................................................................ 24

**Other Authorities**

"Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of
    Removal Proceedings; Asylum Procedures," 62 Fed. Reg. 10312 (Mar. 6, 1997) ................... 19

**Regulations**

8 C.F.R. § 235.1(a) ................................................................................................. 6

8 C.F.R. § 236.1(d)(1) .......................................................................................... 19

**Constitutional Provisions**

U.S. Const. art. I, § 9, cl. 2 .................................................................................. 4

1

2

**Table of Contents**

3    **PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR**

4    **DECLARATORY AND INJUNCTIVE RELIEF** ...................................................................0

5    **INTRODUCTION** ...............................................................................................................1

6

7    **JURISDICTION, VENUE, EXHAUSTION** ......................................................................3

8    **PARTIES** ............................................................................................................................4

9    **LEGAL BACKGROUND** ..................................................................................................5

10       *A.    The Immigration and Nationality Act* ...........................................................5

11       *B.    The Administrative Procedure Act (APA)* .....................................................8

12
         *C.    The Fourth Amendment* .................................................................................9
13
         *D.    The Fifth Amendment* ..................................................................................10
14

15    **FACTS** ..............................................................................................................................11

16    **ARGUMENT** ...................................................................................................................12

17       *A.    The Respondents Lack Statutory Authority to Detain Petitioner under 8 U.S.C. §*

18       *1225(b)(2)(A) Because He was Arrested in the Interior and Was Not "Seeking Admission* .....12

19
         *B.    II. As Applied Here, the Petitioner was Not "Seeking Admission" When Arrested Years*
20
         *After Entry While Walking Home in Long Island, New York* ...................................................14
21
         *C.    The Petitioner is a Member of the* Maldonado Bautista *"Bond Eligible Class," and*
22
         *Therefore Must be Treated as Detained Under § 1226, not § 1225, and the Respondents Must*
23
         *Provide Bond Consideration.* ....................................................................................................15
24

25       *D.    Detaining the Petitioner Under § 1225(b)(2)(A) Is "Not in Accordance with Law" and*

26       *"In Excess of Statutory Authority" in Violation of the APA.* ....................................................16

27

28

*E.    The Respondents' Policy of Treating Interior Arrests as Mandatorily Detainable Under INA § 1225(b)(2)(A) Without a Bond Hearing Is Arbitrary and Capricious in Violation of the APA* 18

*F.    The Respondents' Initial Seizure of the Petitioner Violated the Petition's Fourth Amendment Due Process Rights* ...................................................................................20

*G.    The Respondents' No-Bond Detention of the Petitioner Violates His Fifth Amendment Due Process Rights* .................................................................................................................21

*H.    The Court Should Order Immediate Release (Not Merely a Bond Hearing) Because Unlawful Executive Detention, and a "Do-Over" Bond Hearing Would Not Cure the Ongoing Constitutional Harm* ...........................................................................................................23

**PRAYER FOR RELIEF** .................................................................................................25

1

2

**INTRODUCTION**

3      1.     Petitioner Aurelio Amador Aldana (hereinafter "Petitioner" or "Aurelio") entered the

4   U.S. in 2004 at age seventeen (17), over twenty-two (22) years ago. On Sunday, February 8, 2026,

5   after leaving his Sunday service in Long Island, New York, the Petitioner was walking home from

6   church when he was approached by several Immigration and Customs Enforcement (hereinafter

7   "ICE") officers. The officers began questioning him about his legal status and asked for identification.

8   Within minutes of this interaction, the Petitioner found himself handcuffed and being taken to an ICE

9

10   processing center.

11      2.     The Petitioner is currently detained at 26 Federal Plaza in New York. Respondents have

12   a practice of transferring detainees after 72 hours. Because the Respondents have detained the

13   Petitioner since February 8, 2026, he may be transferred as soon as tonight or tomorrow. Counsel has

14   not received any written notice of transfer, any planned destination, or any administrative explanation

15   for the transfer. In counsel's experience, transfers from local jails can occur with little or no advance

16   notice and can substantially disrupt attorney access, delay time-sensitive fact development, and

17   impede the preparation and submission of evidence necessary to litigate an emergency habeas petition

18

19   and TRO motion.

20      3.     Because this filing is an emergency and counsel has not yet obtained the charging

21   documents, custody records, or attorney access needed to fully develop the record, Petitioner seeks

22   narrow injunctive relief to preserve the status quo. Specifically, Petitioner respectfully requests

23   emergency relief to prevent transfer, compel production of essential records, and allow the Court to

24   adjudicate Petitioner's claims on an adequate record.

25

26      4.     Petitioner brings this habeas action under 28 U.S.C. § 2241 because ICE is detaining

27   him without lawful statutory authority and without a fair opportunity to seek release on bond. The

28   Respondents are treating the Petitioner and will continue to treat him during the pendency of his

proceedings as subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), even though they arrested him in the interior of the United States after twenty-two (22) years of presence and, therefore, he is not "seeking admission" within the meaning of § 1225(b). This misclassification is the direct reason the Respondents are denying the Petitioner bond and is the core legal defect this Court must remedy.

5.     This Petition also seeks to enforce the Petitioner's rights as established by a final federal judgment, which the Respondents have blatantly refused to respect. In *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), the court issued a final declaratory judgment stating that members of the certified Bond Eligible Class are detained pursuant to 8 U.S.C. § 1226(a), and therefore may not be categorically denied bond consideration under 8 U.S.C. § 1225(b)(2)(A). Since that judgment was issued, it has not been stayed or vacated. However, despite its binding authority, the Executive Office for Immigration Review ("EOIR") has directed immigration judges nationwide to ignore Maldonado Bautista and continue denying bond requests based on DHS's interpretation of § 1225. The district court explicitly recognized this ongoing noncompliance when issuing the final judgment. The Respondents' failure to comply with this final federal ruling highlights the necessity for habeas and injunctive relief in this case.

6.     The Respondents' ongoing refusal is driven by DHS's July 8, 2025, "Interim Guidance Regarding Detention Authority for Applicants for Admission," which attempts to reclassify broad categories of interior-arrested noncitizens charged with inadmissibility as "applicants for admission" subject to § 1225(b)(2)(A)'s mandatory detention regime. EOIR has reinforced that position in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025), in which the Board of Immigration Appeals held that immigration judges lack bond jurisdiction for "arriving aliens and applicants for admission" detained under § 1225(b). DHS has invoked this framework to argue that many EWI respondents arrested in the interior are subject to § 1225(b)(2)(A) detention and therefore categorically ineligible

2

1    for bond.

2    7.    That policy-driven interpretation is wrong as a matter of statutory construction and

3    structure. § 1225 is an inspection/border arrival detention scheme for noncitizens "seeking

4    admission." Treating years-long interior residents as perpetually "seeking admission" reads the

5    statute's temporal and geographic limits out of the text, ignores the ordinary meaning of "seeking,"

6    and collapses the Immigration and Nationality Act ("INA")'s two detention frameworks into one,

7    making other statutes superfluous and contrary to Congressional intent.

8    8.    The Petitioner seeks immediate habeas relief through a Temporary Restraining Order

9    (TRO)/Preliminary Injunction (PI), an order for immediate release, or a prompt, *Velasco Lopez*-

10   compliant bond hearing within 7 days.[1] At the hearing, the Government must demonstrate danger or

11   flight risk by clear and convincing evidence; the Immigration Judge (IJ) must consider alternatives to

12   detention and the ability to pay, and must issue detailed, on-the-record findings. Petitioner also

13   requests short-term no-transfer protection or 48 hours' notice to ensure the hearing is meaningful.

**JURISDICTION, VENUE, EXHAUSTION**

9.    This Court has jurisdiction over this petition under 28 U.S.C. § 2241 because Petitioner

is "in custody" within this District and challenges the legality of his ongoing civil immigration

detention. The Court also has jurisdiction under 28 U.S.C. § 1331 because the Petition raises claims

under the Constitution and laws of the United States, including the Immigration and Nationality Act

("INA") and the Administrative Procedure Act ("APA"), as well as relief under the Fourth

Amendment's protections against unlawful seizures and the Fifth Amendment's Due Process Clause,

which independently supports habeas jurisdiction. See *Zadvydas v. Davis*, 533 U.S. 678 (2001). The

Petitioner also invokes the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, as an independent

---

[1] *See Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)

constitutional guarantee of meaningful habeas review.

10.    Venue and personal jurisdiction are properly situated in the Eastern District of New York because Petitioner is detained at the NYC Holding Room in Federal Plaza, New York, which lies within the Eastern District of New York; the district of confinement is therefore the proper forum. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

11.    The petition is properly brought and should be heard forthwith under 28 U.S.C. § 2243 (court to "summarily hear and determine" habeas) and given priority under 28 U.S.C. § 1657(a).

12.    While exhaustion is often required before immigration detention may be challenged under § 2241, it is "prudential," not a "statutory requirement," and may be excused when it would provide no genuine opportunity for adequate relief, cause irreparable injury without immediate judicial intervention, or be futile, or when substantial constitutional questions are presented. *J.U. v. Maldonado,* No.25-CV-04836, 2025 WL 2772765 3* (E.D.N.Y. Sept. 29, 2025), *citing Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003); *Quintanilla v. Decker*, No. 1:2021-cv-00417, Doc. 12 at 3 (S.D.N.Y. Feb 22, 2021).

13.    Exhaustion should be excused here because further administrative litigation is futile and inadequate. The Department of Homeland Security (hereinafter "DHS") and EOIR deny bond jurisdiction to noncitizens they classify under INA § 1225(b)(2), and the BIA has issued a binding precedent holding that immigration judges lack jurisdiction to conduct custody redeterminations for respondents deemed subject to § 1225(b)(2). *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Thus, requiring Petitioner to pursue a custody request through the immigration court and administrative appellate process would not provide a meaningful avenue for relief and would only prolong the very detention Petitioner challenges, exacerbating his constitutional injuries.

**PARTIES**

14.    The Petitioner, Aurelio Amador Aldana -Pimentel, is currently in ICE custody.

4

15.     Respondent, Kristi Noem, is the Secretary of DHS, and she is sued in her official capacity. The Secretary of DHS is responsible for administering and enforcing immigration laws. 8 U.S.C. § 1103(a).

16.     Respondent, Pamela Bondi, is the Attorney General of the United States and is sued in her official capacity. The Attorney General is responsible for the fair administration of the laws of the U.S.

17.     Respondent, the Executive Office for Immigration Review (EOIR), is a division of the DOJ that conducts removal/bond hearings and appeals through the Immigration Court and the Board of Immigration Appeals (BIA).

18.     Respondent, Todd Lyons, is the Acting Director of ICE and is sued in his official capacity. ICE is responsible for the Petitioner's detention.

19.     Respondent Joseph Cardinale is the Immigration and Customs Enforcement Field Office Director at the ICE New York city field office and is sued in his official capacity.

## LEGAL BACKGROUND

*A. The Immigration and Nationality Act*

20.     The Immigration and Nationality Act ("INA") establishes three types of detention for noncitizens. First, under 8 U.S.C. § 1226, the government can detain noncitizens during regular non-expedited removal proceedings before an IJ. *See* 8 U.S.C. § 1226(a). Individuals detained under §1226(a) are eligible for bond hearings, as outlined in 8 C.F.R. §§ 1003.19(a) and 1236.1(d), while those arrested, charged with, or convicted of certain offenses are subject to mandatory detention under 8 U.S.C. §1226(c). Second, under 8 U.S.C. § 1225(b)(1), noncitizens subject to expedited removal are detained. Section §1225(b)(2) extends mandatory detention to other applicants for admission who are not covered by expedited removal. Lastly, 8 U.S.C. § 1231(a)–(b) (post-final-order detention)

authorizes the detention of noncitizens with final orders.

21.     This case concerns which statutory classification—§1226(a) or §1225(b)(2)—governs Petitioner's custody. The detention provisions in §1226(a) and §1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. After Congress enacted IIRIRA, EOIR drafted regulations stating that individuals who entered the U.S. without inspection are to be detained under §1226(a). Since then, most EWIs—unless detained by another authority—have been granted bond hearings. This reflects a long-standing policy that treats noncitizens not deemed "arriving" as entitled to a custody hearing before an IJ or another officer.

22.     § 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Its operative provisions focus on inspection and application for admission. The statute repeatedly uses the present tense when referring to individuals "seeking admission" and contemplates an "examining immigration officer" making an inspection-based determination. 8 U.S.C. § 1225(a), (b)(2)(A).

23.     Critically, § 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission," if the examining officer determines that an alien "seeking admission" is not clearly entitled to be admitted, "the alien shall be detained for a proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(A). Consistent with that text and structure, federal regulations implementing the inspection framework likewise contemplate that "application to lawfully enter" is made to an immigration officer at a port of entry when the port is open for inspection (or as otherwise designated). 8 C.F.R. § 235.1(a).

24.     Respondents' new policy—treating all noncitizens as §1225(b)(2)(A) applicants for admission even when arrested far from the border—undermines this well-established understanding and violates the statutory scheme. The Supreme Court has held that §1226 governs the detention of noncitizens who entered without inspection and were later apprehended inside the U.S. *See Jennings*

*v. Rodriguez*, 583 U.S. 281 (2018). *Maldonado Bautista v. Santacruz*, which granted a declaratory judgment confirming that bond denial class members are detained under 8 U.S.C. §1226(a), further supports this well-established understanding. No. 5:25-CV-01873-SSS-BFM (C.D. Cal).

25.     EDNY has emphasized that § 1225(b)(2)(A)'s "seeking admission" language has meaning and is not surplusage: in *J.U. v. Maldonoado*, the court analyzed the statutory text and explained why treating a long-present interior arrestee as perpetually "seeking admission" improperly collapses the statute's inspection/admission framework into a roving interior detention authority. No.25-CV-04836, 2025 WL 2772765, 7* (E.D.N.Y. Sept. 29, 2025). A central feature of the emerging NY district-court case law addressing this precise dispute is that §§ 1225 and 1226 are structurally distinct and operate in different contexts. Sister courts in NY have described the provisions as "mutually exclusive" frameworks rather than overlapping authorities that DHS may select at will.[2] This includes the EDNY district courts.[3]

26.     Against this statutory backdrop, *Maldonado Bautista v. Santacruz* addressed DHS's July 2025 detention policy and entered final judgment declaring that the certified nationwide class (the "Bond Eligible Class") "is detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b)(2)." 5:25-cv-01873-SSS, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). That final judgment matters in the present detention-authority dispute because it reflects the same core statutory conclusion NY district courts have reached in individual habeas cases: DHS cannot transform § 1225(b)(2)(A) into a universal, mandatory detention regime for long-present interior

---

[2] *Alvarez Ortiz v. Freden*, No. 25-cv-960-LJV, 2025 WL 3085032 (W.D.N.Y Nov. 4, 2025); *Nevarez Jurado v. Freden*, No. 25-cv-943-LJV, 2025 WL 3687264 (W.D.N.Y. Dec. 19, 2025) (ordering release); *Padilla Molina v. Deleon*, No. 2:25-cv-06526-JMA (E.D.N.Y. Dec. 23, 2025); *J.G.O. v. Francis*, No. 25-CV-7233-AS, 2025 WL 3040142 (S.D.N.Y. Oct. 28, 2025); *Romero Perez v. Francis*, No. 25-CV-8112-JGK, 2025 WL 3110459 (S.D.N.Y. Nov. 6, 2025); *Villegas ex rel. Guzman Andujar v. Francis*, No. 25-CV-9199-JLR, 2025 WL 3215597 (S.D.N.Y. Nov. 18, 2025); *Yao v. Almodovar*, No. 25-cv-09982-PAE, 2025 WL 3653433 (S.D.N.Y. Dec. 17, 2025.
[3] *Ulloa Montoya v. Bondi*, No. 25-CV-06363, 2025 WL 3718694 (E.D.N.Y. Dec. 23, 2025), *J.U. v. Maldonado*, No.25-CV-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025), *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025), *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025), *Sarmiento Guerrero v. Noem*, No. 25-CV-5881, 2025 WL 3214787 (E.D.N.Y. Nov.18, 2025).

arrestees without effectively reading the statute's inspection-based and present-tense "seeking admission" limits out of the INA and collapsing § 1226's distinct role.

### B.  The Administrative Procedure Act (APA)

27.    The Administrative Procedure Act (hereinafter "APA"), 5 U.S.C. §§ 551–706, governs agency action taken by DHS and EOIR in administering and interpreting the INA. Under the APA, reviewing courts must "hold unlawful and set aside agency action, findings, and conclusions" that are (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right; or (3) in excess of statutory jurisdiction, authority, or limitations. 5 U.S.C. § 706(2)(A)–(C).

28.    Agency action subject to APA review includes not only formal rules, but also policies, guidance memoranda, and interpretive positions that have legal consequences or bind agency decisionmakers. The Supreme Court has made clear that agencies may not evade APA scrutiny by labeling binding policies as "guidance" or "interpretive." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (defining final agency action reviewable under the APA). The APA independently requires courts to set aside agency action taken "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C). This provision applies where an agency asserts regulatory or enforcement power that Congress did not confer, even if the agency claims to be interpreting an ambiguous statute. *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). Further, the Supreme Court has cautioned that detention authority must be grounded in clear statutory authorization, not agency preference. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

29.    DHS's July 2025 detention guidance—and EOIR's implementation of that guidance through categorical bond denials—constitute final agency action reviewable under the APA. The Respondent's definitive position has immediate and binding legal consequences: immigration judges are instructed that they lack jurisdiction to conduct bond hearings. *See Matter of Yajure Hurtado*, 29

I. & N. Dec. 216 (BIA 2025). Under *Bennett v. Spear*, agency action is final where it marks the "consummation" of the agency's decision-making process and determines rights or obligations. 520 U.S. at 177–78. DHS's detention policy easily meets that standard.

30.    In *Maldonado Bautista v. Santacruz*, the Central District of California held that DHS's detention policy interpreting § 1225(b)(2)(A) was "not in accordance with law" and "in excess of statutory authority" under the APA, and the court vacated the policy and entered declaratory relief on a nationwide classwide basis. The court further recognized that DHS and EOIR continue to apply unlawful interpretation despite adverse judicial rulings, necessitating final declaratory relief. That judgment underscores the core APA principle at issue here: an agency may not persist in enforcing a policy that exceeds its statutory authority and conflicts with governing law simply because it prefers a broader detention scheme. Accordingly, where the Respondents' detention rests on an unlawful statutory interpretation embodied in a binding policy, the APA provides an independent basis for relief, requiring the Court to set aside that action and restore detention decisions to the framework Congress enacted.

### C.  The Fourth Amendment

31.    The Fourth Amendment guarantees "the right of the people… against unreasonable searches and seizures shall not be violated." U.S. Const. amend. IV; *United States v. MacDonald,* 916 F.2d 766, 769 (2d Cir. 1990). In the Eastern District of New York, courts apply established constitutional principles requiring warrants based on probable cause, subject to recognized exceptions. *U.S. v. Kone*, 591 F.Supp.2d 593, 604-605 (S.D.N.Y. Nov. 5, 2008)(stating that "[t]he Constitution explicitly states that 'no Warrants shall issue, but upon probable cause… Probable cause requires more than a 'mere suspicion' of wrongdoing."). This Fourth Amendment protection applies to both citizens and noncitizens. *Cotzojay v. Holder*, No. 11-4916 (2d Cir. 2013). While 8 U.S.C. § 1357(a)(1) authorizes immigration officers to "interrogate any alien or person believed to be an alien as to his

right to be or to remain in the United States," it does not license immigration officials to employ unconstitutional enforcement methods. *I.N.S. v. Delgado*, 466 U.S. 210, 235 (1984).

32.    Under the Fourth Amendment, not all encounters between immigration officials and individuals constitute a seizure. A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave" *U.S. v. St. Kitts*, 742 F.Supp. 1218 (W.D.N.Y. Aug. 23, 1990). Police questioning regarding one's identity, or a request for identification, is, without more, not a seizure for Fourth Amendment purposes. *Gallegos v. Haggerty*, 689 F.Supp. 93 (N.D.N.Y. Apr. 12, 1988). However, when an immigration officer yells a command to stop or physically restrains an individual, a seizure has occurred. *Almeida-Amaral v. Gonzales*, 461 F.3d 231 (2nd Cir. 2006).

### D.  The Fifth Amendment

33.    The Fifth Amendment constrains civil immigration detention and states that "No person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and it safeguards both the substantive liberty interest in freedom from physical confinement and the procedural right to a meaningful opportunity to challenge that confinement. See *Zadvydas v. Davis*, 533 U.S. 678, 690, 693, 721 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Reno v. Flores*, 507 U.S. 292, 306 (1993). In this context, detention is constitutionally permissible only for the recognized purposes of preventing flight and protecting the community, and only when procedures are sufficient to ensure that the government's justification outweighs the individual's liberty interest. *Zadvydas,* 533 U.S. at 690; *Demore*, 538 U.S. at 528.

34.    What process is "due" is evaluated using the three-factor test from *Mathews v. Eldridge*: (1) the private interest affected; (2) the risk of erroneous deprivation through existing procedures and

the value of additional safeguards; and (3) the government's interest, including administrative burdens. 424 U.S. 319, 335 (1976). The liberty interest in avoiding imprisonment "lies at the heart" of due process; the risk of error becomes significant when detention is based on unexplained custody decisions; and the government's interests are fully compatible with procedures that distinguish justified detention from confinement based on speculation. *Mathews*, 424 U.S. at 335, 348; *Zadvydas*, 533 U.S. at 690.

35.     In the Second Circuit, prolonged civil detention without meaningful process violates fundamental due process principles. *See Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020). The *Velasco Lopez* court explained that (1) the government must bear the burden of justifying continued civil detention; (2) the burden must be clear and convincing evidence; (3) detention must be justified by an individualized showing of dangerousness or flight risk; and (4) decision-makers must consider alternatives to detention and the ability to pay. *Id*. 854-55; *see also*, *e.g.*, *Hyppolite v. Noem*, No. 25-cv-4304-NRM, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).

## FACTS

36.     The Petitioner entered the U.S. without inspection or apprehension in 2004 through the U.S. Mexico border, at the age of seventeen (17), from Guatemala. After entering the U.S., he moved to New York, where he lived until he was apprehended on February 8, 2026. The Petitioner has no other immigration violations and no criminal history. On Sunday, February 8, 2026, the Respondent was leaving his Sunday church service in Copiague, Long Island, and was walking home when several ICE officers approached him. The officers questioned and surrounded him, and he was quickly apprehended and arrested.

37.     As of February 12, 2025, the Petitioner continues to be detained at the NYC holding room in 26 Federal Plaza, New York. ICE has not yet provided a warrant for Petitioner's initial arrest. The Petitioner is scheduled for a preliminary immigration court hearing on Tuesday, February 17,

2026, before the Varick, New York, Immigration Court.

# ARGUMENT

*A. The Respondents Lack Statutory Authority to Detain Petitioner under 8 U.S.C. § 1225(b)(2)(A) Because He was Arrested in the Interior and Was Not "Seeking Admission"*

38.    The Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

39.    ICE has detained Petitioner without an opportunity to request an individualized bond hearing due to the Respondent's interpretation of 8 U.S.C. § 1225(b)(2)(A), a statute that is not applicable to the Petitioner. 8 U.S.C. § 1225(b)(2)(A) mandates detention only in a specific, inspection-based circumstance: "in the case of an alien who is an applicant for admission," "if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted," the alien "shall be detained" for § 1229a proceedings (emphasis added). This text contains limiting terms that Respondents' position effectively deletes: (1) an "examining" immigration officer, (2) a present-tense individual "seeking admission," and (3) an inspection/admission framework that Congress placed in § 1225 rather than § 1226.

40.    By contrast, 8 U.S.C. § 1226 is the general arrest-and-detention authority for noncitizens already within the United States "pending a decision on whether the alien is to be removed." 8 U.S.C. § 1226(a). The Supreme Court has described § 1226 as authorizing detention of "aliens already in the country pending the outcome of removal proceedings," distinguishing it from § 1225's admission/inspection scheme. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). As such, noncitizens who entered without inspection should be detained under §1226(a), unless they are subject to another mandatory detention provision, such as § 1225(b)(1), § 1226(c), or § 1231.

41.    The present-tense "seeking admission" phrase in the statute is significant and should be looked to when analyzing the limitations of the statute. In *J.U. v. Maldonado*, the EDNY found that

the Respondent's argument that every noncitizen who has not been lawfully admitted into the United States continues to be a noncitizen "seeking admission" under § 1225(b)(2)(A) incorrectly equates "applicant for admission" with "seeking admission," which would render § § 1225(b), 1226(c)(1)(A), (D), and (E) superfluous. No.25-CV-04836, 2025 WL 2772765, 8*(E.D.N.Y. Sept. 29, 2025). The court concluded that Respondent's current interpretation of § 1225 would contravene congressional intent and found that § 1226(a)'s discretionary framework applies to all citizens arrested while residing in the United States. Similarly, in *O.F.B. v. Maldonado*, the court rejected the Respondents' statutory interpretation and reasoned that "it only makes sense if you read § 1225 in a vacuum." No. 25-CV-6336, 2025 WL 3277677, 4*(E.D.N.Y. Nov. 25, 2025).

42.    8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an immigration judge. *See* 8 U.S.C. § 1229a. Individuals detained under §1226(a) are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention. *See* 8 U.S.C. § 1226(c). Conversely, §1225(b)(2) applies only to aliens seeking admission after examination by an immigration officer—that is, those *seeking admission*. DHS and the BIA are diverging from the long-established and well-settled interpretation of §1225(b)(2), which has effectively made §1226 obsolete. §1226(c) requires detention for aliens involved in an enumerated crime, including those present in the U.S. without being admitted or paroled. DHS's interpretation would render §1226(c) meaningless, as all noncitizens present without admission would fall under § 1225's mandatory detention authority regardless of criminal charges.

43.    EDNY and its sister courts have also recognized that § 1225(b)(2)'s structure points to a border-related detention. Subparagraph (B) exempts "crewman" and "stowaway," and subparagraph (C) authorizes return to a contiguous territory for certain land arrivals. Those carve-outs concern modes of arrival and immediate border processing, reinforcing that Congress was speaking to people

13

presenting at or near the border, not long-settled interior residents. *Sarmiento Guerroero v. Noem*, No. 25-CV-5881, 2025 WL 3214787, 4*(E.D.N.Y. Nov. 18, 2025). *See also*, *J.G.O. v. Francis,* finding that "[E]very part of § 1225 suggests that it applies to aliens who are arriving in the country." No. 25-CV-7233, 2025 WL 3040142, 4* (S.D.N.Y. Oct. 28, 2025). Similarly, in *Quituizaca Quituisaca v. Bondi*, 6:25-cv-6527, 2025 WL 3264440, at *3 (W.D.N.Y. Nov. 24, 2025), the court emphasized that § 1225(b)(2)(A) has multiple distinct prerequisites, and that the statutory language "suggests that § 1225(b)(2) applies to individuals stopped at the border—not those … who were already residing in this country." Put simply: if Congress had intended § 1225(b)(2) to authorize mandatory detention without bond for any person DHS could label an "applicant for admission" at any time in the future, the "seeking admission" language and border-arrival context would be surplusage. Courts have refused to read the statute in a way that makes Congress's words meaningless.

   B.  *As Applied Here, the Petitioner was Not "Seeking Admission" When Arrested Years After Entry While Walking Home in Long Island, New York*

44.    The Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

45.    The Petitioner entered the U.S. for the first and only time in 2004. He was not apprehended, inspected, or admitted into the U.S. Shortly after entering the U.S., the Petitioner moved to New York, where he has lived for several years. The Petitioner was first approached and arrested by ICE officers on February 8, 2026, after leaving his Sunday church service. At the time of the Petitioner's arrest, there was no contemporaneous border cross, port-of-entry encounter, inspection, or application for admission. Under the statute as written and as applied by New York federal courts in this scenario, that is § 1226's purview: "aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289.

46.    Because § 1225(b)(2)(A) does not apply to Petitioner's interior arrest and years-long presence, the Respondents lack statutory authority to hold him in mandatory, no-bond detention under

§ 1225(b)(2)(A). The proper statutory framework is § 1226(a), which provides for bond eligibility and custody redetermination procedures.

C.  *The Petitioner is a Member of the* Maldonado Bautista *"Bond Eligible Class," and Therefore Must be Treated as Detained Under § 1226, not § 1225, and the Respondents Must Provide Bond Consideration.*

47.  The Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

48.  In *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), the court certified a nationwide class of noncitizens who entered without inspection and were later detained in the interior under DHS's July 2025 detention policy (the "Bond Eligible Class"). The Bond Eligible Class includes "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination. *Id*. at *9.

49.  After adjudicating the merits, the court entered final judgment declaring, among other things, that "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b)(2)." *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). The judgment further declares that, under the governing regulations, class members are entitled to bond consideration and (if not released by ICE) a custody redetermination hearing before an immigration judge under the § 1226(a) framework. *Id*.

50.  The Petitioner falls squarely within the category of individuals that *Maldonado Bautista* protects Specifically: (a) the Petitioner entered the United States without inspection and (b) was not apprehended upon arrival – he was instead arrested in the interior of New York, while walking home from church, and (c) the Respondents are not detaining the Petitioner under the statutory exclusions that remove individuals from the class. On these facts, the Petitioner is entitled to the benefit of the

court's class-wide declaration.

51.    Accordingly, the Respondents' continued treatment of the Petitioner as a § 1225(b)(2) mandatory detainee is unlawful as applied to him as a class member. The appropriate remedy is an order requiring immediate release, the Respondents to comply with the declaratory relief and the INA by treating Petitioner as detained under § 1226(a), or alternatively, providing prompt bond consideration and, if necessary, an IJ custody redetermination hearing under the § 1226(a) framework.

*D.  Detaining the Petitioner Under § 1225(b)(2)(A) Is "Not in Accordance with Law" and "In Excess of Statutory Authority" in Violation of the APA.*

52.    Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

53.    The Administrative Procedure Act ("APA"), codified at 5 U.S.C. §§ 551–559, governs procedures in administrative law. The APA authorizes federal courts to (1) decide all relevant questions of law; (2) interpret constitutional and statutory provisions; and (3) determine the meaning or applicability of an agency's action. According to *Loper Bright v. Raimondo*, the APA requires courts to exercise their independent judgment in deciding whether an agency acted within its statutory authority, and "may not defer to an agency interpretation of the law simply because a statute is ambiguous." 603 U.S. 369, 395, 401 (2024). Furthermore, a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action ... is entitled to judicial review." 5 U.S.C. § 702. Relief may include "writs of prohibitory or mandatory injunction or habeas corpus." 5 U.S.C. § 703. Courts can "compel agency action unlawfully withheld or unreasonably delayed," §706(1), or "hold unlawful and set aside agency action" that is arbitrary, capricious, contrary to law, or in excess of statutory jurisdiction, § 706(2)(A)–(C).

54.    Applying §1225(b)(2) to Petitioner—an interior arrestee in §1229a proceedings— exceeds statutory authority (§ 706(2)(C)) and is not in accordance with law (§ 706(2)(A)). As discussed above, New York federal courts have rejected the Respondents' attempt to use §

1225(b)(2)(A) as a categorical, mandatory detention regime for individuals arrested in the interior years after entry.[4] The text, structure, and history limit §1225 to applicants "seeking admission" at, or effectively at, the border; §1226(a) serves as the default detention authority for §1229a proceedings and maintains IJ bond jurisdiction. *See* 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997). The Respondents' new interpretation ignores that framework. The result is unlawful and continued detention without an individualized bond analysis of noncitizens categorically misclassified.

55.    The Respondents' interpretation is also unlawful under the APA because it effectively rewrites the INA's detention framework. The Supreme Court has cautioned that agency implementation authority "does not include a power to revise clear statutory terms that turn out not to work in practice." *Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 327 (2014). Yet that is precisely what DHS and EOIR have done here: by treating long-present interior arrestees as subject to § 1225(b)(2)(A) mandatory detention based on inadmissibility charging language and regulatory labeling, the Respondents read the statute's "seeking admission" limitation out of § 1225 and render § 1226(a) irrelevant for broad categories of noncitizens arrested inside the United States. Because the Respondents' detention of Petitioner under § 1225(b)(2)(A) conflicts with the statute as written and as applied by courts in this Circuit, it is "not in accordance with law" and must be set aside. 5 U.S.C. § 706(2)(A).

56.    Independently, the Respondents' approach exceeds the authority Congress conferred. The APA requires courts to set aside agency action "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C). DHS's July 8, 2025, interim guidance and EOIR's attempt to implement bond denials seek to create a mandatory detention scheme for interior-arrested, long-present noncitizens that Congress did not enact in § 1225. In other words, the Respondents are not merely interpreting statutory gaps; they are asserting detention authority beyond the statute's

---

[4] *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).

inspection-based trigger.

57.     That conclusion is reinforced by the final judgment in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). There, the court entered final judgment, declaring that the certified "Bond Eligible Class" members "are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b)(2)," and vacated DHS's July 8, 2025, interim guidance "under the Administrative Procedure Act as not in accordance with law." That judgment confirms the core APA problem: DHS's guidance purported to expand § 1225(b)(2)(A) beyond what Congress authorized, and the court set it aside.

58.     Because the Respondents' detention classification is "not in accordance with law" and "in excess of statutory authority," this Court should set aside the Respondents' application of § 1225(b)(2)(A) to Petitioner and order the Respondents to treat Petitioner as detained under § 1226(a), with bond consideration and an IJ custody redetermination hearing available under the governing regulations and constitutional standards.

E.   *The Respondents' Policy of Treating Interior Arrests as Mandatorily Detainable Under INA § 1225(b)(2)(A) Without a Bond Hearing Is Arbitrary and Capricious in Violation of the APA*

59.     Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

60.     A court must "hold unlawful and set aside" agency action that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if, among other things, the agency (i) relied on factors Congress did not intend it to consider, (ii) entirely failed to consider an important aspect of the problem, (iii) offered an explanation that runs counter to the evidence, or (iv) made a decision so implausible it cannot be ascribed to agency expertise or a difference in view. *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). When an agency changes position, it must at least show awareness of the change, provide good reasons, and address serious reliance interests the prior policy engendered. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22

(2016); *FCC v. Fox Television Stations*, *Inc.*, 556 U.S. 502 (2009). The Second Circuit applies this deferential framework but still requires a "satisfactory explanation" and a "rational connection between the facts found and the choice made," and it will set aside an action that is arbitrary or capricious under § 706(2)(A). *Nat. Res. Def. Council, Inc. v. FAA*, 564 F.3d 549 (2d Cir. 2009) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983)).

61.     The Respondents' § 1225(b)(2) bond-denial approach is arbitrary and capricious for several reasons because it effects a sweeping bond-denial classification decision without reasoned decision-making. First, the Respondents are using a categorical rule that converts interior arrests of long-present noncitizens into mandatory § 1225(b)(2) detention, eliminating the bond framework Congress created in § 1226(a). That kind of structural rewrite is exactly the sort of "important aspect of the problem" *State Farm* requires the agency to grapple with, not ignore,

62.     Secondly, it is an unexplained (or insufficiently explained) shift with predictable reliance consequences. When Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), the Immigration and Naturalization Service and EOIR issued the foundational implementing regulations in a 1997 interim rule: "Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures," 62 Fed. Reg. 10312 (Mar. 6, 1997). Over the ensuing decades, the agency's detention regulations have continued to provide that, after DHS makes an initial custody/bond decision, a respondent may seek an IJ custody redetermination under 8 C.F.R. § 236.1(d)(1), reflecting the settled understanding that § 1226(a) is the operative detention authority for noncitizens already in the United States pending removal proceedings, absent a specific mandatory-detention provision. Therefore, DHS's July 8, 2025, guidance is a sharp departure from thirty years of consistent implementation. Under *Encino Motorcars* and *State Farm*, an agency must acknowledge such a shift and provide a reasoned explanation, including addressing reliance interests and the obvious alternative of continuing to use

the long-established § 1226(a) bond framework; unexplained departures from longstanding policy are arbitrary and capricious.

63.     Third, the Petitioner's detention is arbitrary in light of the *Maldonado Bautista* final judgment. The *Maldonado Bautista* court reveals that the Respondents have instructed immigration judges to disregard *Maldonado Bautista* and to continue denying bond jurisdiction based on the same § 1225(b)(2) theory the court rejected. An agency's decision to persist in applying a policy that a federal court has already declared unlawful—without acknowledging the judgment, explaining its reasoning, or altering its approach—reflects precisely the sort of unreasoned decisionmaking the APA forbids. *See Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). Continuing to apply the bond-denial scheme to the Petitioner, a putative class member, in the face of binding declaratory relief further underscores the arbitrariness of the Respondents' action and independently warrants relief under 5 U.S.C. § 706(2)(A).

F.   *The Respondents' Initial Seizure of the Petitioner Violated the Petitioner's Fourth Amendment Due Process Rights*

64.     Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

65.     The Fourth Amendment protects against unreasonable searches and seizures of both citizens and noncitizens. *Cotzojay v. Holder*, No. 11-4916 (2d Cir. 2013). For seizures of persons, the Fourth Amendment requires that "before (a police officer) places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so." *United States v. Vasquez,* 638 F.2D 507, 520 (2d. Cir. 1980). The Petitioner was approached on his walk home by several ICE officers and was within minutes of the interaction seized for lacking immigration status. On this day, several officers approached the Petitioner, interrogated him, and questioned him without an articulable reason to harbor suspicion against him. To reiterate, the Petitioner has no prior immigration or criminal history. On this day, he was walking home after his Sunday church service,

and thus, no reason existed for the ICE officers to approach him, other than his appearance and evidence of race as a Latino man. The officers, therefore, subjected the Petitioner to a suspicionless arrest and involuntary seizure solely based on his race, in violation of his rights under the Fourth Amendment. This violation, in addition to his statutory, APA, and Fifth Amendment violations, compounds the hardship the Petitioner is suffering and underscores the immediate need for interception by the court.

G. *The Respondents' No-Bond Detention of the Petitioner Violates His Fifth Amendment Due Process Rights*

66.    Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

67.    The government cannot deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. According to *Zadvydas v. Davis*, freedom from imprisonment "from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. 533 U.S. 678, 690, (2001). Due process demands procedures that reliably justify confinement and ensure a "meaningful time" and "meaningful manner" to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The Respondents have and will continue to deprive the Petitioner of his physical liberty through ongoing civil detention while simultaneously denying him any meaningful opportunity to seek release on bond, based on Respondents' erroneous position that the Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). That posture violates due process in at least two independent ways.

68.    As a baseline constitutional matter, the government must have lawful statutory authority for civil detention, and courts must not lightly presume broad detention power where liberty is at stake. *Zadvydas*, 533 U.S. at 690 (warning that indefinite or unauthorized detention raises serious constitutional problems). The Supreme Court has explained that the INA establishes distinct detention authorities for different contexts: § 1225 governs the detention of certain noncitizens "seeking

21

admission," while § 1226 governs the detention of noncitizens already in the country pending removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). The Petitioner was arrested in the interior of New York, after twenty-two (22) years of his initial entry into the United States. He was not stopped at a port of entry, not encountered during an inspection, and not "seeking admission," at the time of the arrest. The Respondents' decision to treat him as a § 1225(b)(2)(A) mandatory detainee and deny him any bond process, therefore, compounds the statutory defect into a constitutional one. This results in the Petitioner being held under an inspection-based mandatory detention regime that does not lawfully apply to him, thereby depriving him of his liberty and due process rights.

69.     The Petitioner's detention has also violated his procedural due process. Whether the procedures afforded in a civil detention scheme satisfy due process is governed by the three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under *Mathews*, courts weigh: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation under the challenged procedures and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens. *Id*. Applying those factors here confirms that the Respondents' categorical denial of bond consideration violates the Fifth Amendment.

70.     The first *Mathews* factor weighs heavily in the Petitioner's favor. Civil immigration detention involves a severe deprivation of physical liberty, which the Supreme Court has repeatedly described as lying "at the heart of the liberty" protected by due process. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Petitioner is detained without an individualized opportunity to request release and, as such, will be forced to endure prolonged detention while his immigration proceedings continue. The Second Circuit has recognized that this private interest is "fundamental," particularly where detention is prolonged, and the detainee is denied meaningful process to seek release. *Velasco Lopez v. Decker*, 978 F.3d 842, 851–52 (2d Cir. 2020).

71.     The second *Mathews* factor strongly favors the Petitioner because the Respondents' §

1225(b)(2) framework categorically denies bond consideration to individuals like the Petitioner based solely on legal classification, without any individualized assessment of danger or flight risk. That structure creates an obvious and serious risk of erroneous deprivation because detention turns not on whether confinement is necessary, but on an agency's disputed statutory interpretation. The Second Circuit has emphasized that due process is violated where detention continues without the government ever bearing the burden of justifying incarceration. *Velasco Lopez*, 978 F.3d at 852-54. Further, while the Government has an interest in ensuring appearance at removal proceedings and protecting the community, those interests are fully served by individualized bond hearings. Administrative convenience does not outweigh fundamental liberty interests. *Zadvydas*, 533 U.S. at 690.

72.    Balancing the *Mathews* factors together, it is evident that depriving the Petitioner of his liberty interests without an individualized hearing cannot be reconciled with the Fifth Amendment. The Petitioner's liberty interest is profound; the risk of erroneous detention under a categorial-no-bond regime is high; and the Government's interests are adequately protected through existing § 1226(a) bond procedures.

H.  *The Court Should Order Immediate Release (Not Merely a Bond Hearing) Because Unlawful Executive Detention, and a "Do-Over" Bond Hearing Would Not Cure the Ongoing Constitutional Harm*

73.    Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

74.    "Habeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the "traditional function of the writ" is to secure release from illegal custody). Congress likewise directs habeas courts to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. Where the detention authority invoked is unlawful, ordering release is not extraordinary. It is the remedy that restores liberty and prevents the Government from continuing to benefit from its own legal error.

75.     A default-to-bond remedy would be inadequate here because it risks perpetuating the Petitioner's unlawful detention through an unpayable bond or a flight-risk narrative that is untethered to his actual conduct. A remedial order that merely instructs the Respondents to provide a bond hearing can function as an agency "reset," permitting continued detention through a high bond amount beyond the Petitioner's ability to pay or an adverse discretionary outcome, even though the predicate detention basis was unlawful from the outset. Habeas exists to end unlawful custody, not to give the Government a second chance to justify an incarceration it lacked authority to impose in the first place. *Munaf*, 553 U.S. at 693.

76.     Additionally, as discussed above, the *Mathews* factors strongly favor immediate release when the Government's chosen detention basis is unlawful, and the alternative remedy risks continued erroneous incarceration. When the Respondents apply an unlawful statutory scheme to impose no-bond detention, the risk of erroneous deprivation is already realized. A mere bond hearing does not eliminate that risk if it predictably results in continued detention through an unpayable bond or the mischaracterization of lawful employment mobility as "flight." The safeguard that reliably cures the constitutional injury is ending the unlawful detention now. The Government's legitimate interests (appearance and community safety) can be fully protected through supervision and conditions of release tailored to the case, which is exactly why Congress built a conditional-release framework into § 1226(a). Immediate release subject to reasonable conditions is a less restrictive, constitutionally sound alternative to continued detention premised on an unlawful classification. Balancing these factors favors release, not a remedy that risks continued incarceration under a different label. 28 U.S.C. § 2243.

77.     Equity and due process counsel against a remedy that rewards unlawful detention by allowing the Respondents to "fix" the error only after months of confinement. The Court should not adopt a remedy that signals to the Government that it may unlawfully arrest and hold a person, litigate

24

the legality later, and then retain custody by pivoting to a new discretionary process (bond) after the fact. Due process is not satisfied by after-the-fact procedures that risk perpetuating the deprivation of liberty. Where detention is unlawful, habeas relief should be effective, immediate, and liberty-restoring. *Preiser*, 411 U.S. at 484–85; *Munaf*, 553 U.S. at 693.

78.    If the Court is not inclined to order immediate release, it should at minimum order conditional release under reasonable supervision terms, or require that any custody redetermination hearing occur promptly and include express protections to ensure the remedy is meaningful: the Government bears the burden by clear and convincing evidence, consideration of alternatives to detention is mandatory, and any financial condition must reflect ability to pay so that liberty is not denied by price. These guardrails flow from the same due process principles that underlie civil detention review and prevent the bond process from becoming a mechanism for continued unconstitutional confinement.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners respectfully request that this Court:

79.    Assume jurisdiction over this matter to 28 U.S.C. § 2241 and 28 U.S.C. § 1331;

80.    Issue a writ of habeas corpus requiring that, within one day, Respondent release Petitioner[5],

81.    Declare that the Respondents' detention of Petitioner under 8 U.S.C. § 1225(b)(2)(A), is unlawful because Petitioner was arrested in the interior of the United States and was not "seeking admission," and therefore is properly detained, if at all, under 8 U.S.C. § 1226(a);

82.    Declare that Petitioner is a member of the *Maldonado Bautista* Bond Eligible Class and

---

[5] See, e.g., *Chipantiza-Sisalema v. Francis*, 2025 WL 1927931 (S.D.N.Y. July 13, 2025); *O-J-M- v. Bostock*, 2025 WL 1943008, at *1 (D. Or. July 14, 2025), *Ulloa Montoya v. Bondi*, No. 25-CV-06363, 2025 WL 3718694 (E.D.N.Y. Dec. 23, 2025).

that Respondents must comply with the classwide declaratory judgment by treating Petitioner as detained under 8 U.S.C. § 1226(a), and not under 8 U.S.C. § 1225(b)(2)(A);

83.  Hold unlawful and set aside the Respondents' application of the § 1225(b)(2)(A) mandatory detention as it relates to Petitioner as "not in accordance with law" and "in excess of statutory authority," and arbitrary and capricious, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (C);

84.  Order the Respondents to release Petitioner immediately from ICE custody;

85.  In the alternative to immediate release, order the Respondents, within seven (7) days, to provide Petitioner a prompt § 1226(a) bond hearing before an Immigration Judge at which:

a.  The Government bears the burden to prove by clear and convincing evidence that continued detention is necessary because Petitioner is a danger or flight risk;

b.  The Immigration Judge considers alternatives to detention and Petitioner's ability to pay; and

c.  The Immigration Judge makes individualized, reasoned findings on the record;

86.  Enjoin the Respondents from continuing to detain Petitioner under § 1225(b)(2)(A) or otherwise denying him bond jurisdiction based on the § 1225(b)(2) theory, absent a material change in law or circumstances and lawful statutory predicate;

87.  Enjoin the transfer or removal of Petitioner outside this District while this action is pending, or, at a minimum, require at least seventy-two (72) hours' written notice to counsel before any transfer, so that any ordered relief is meaningful and the Court's jurisdiction is preserved;

88.  Order expedited briefing and/or issue an Order to Show Cause as the Court deems appropriate;

89.  Award Petitioner his reasonable attorneys' fees and costs, to the extent authorized by law, including under the Equal Access to Justice Act, 28 U.S.C. § 2412, if applicable;

90.  Waive any security under Fed. R. Civ. P. 65(c), or set a nominal bond, should the Court

1    grant injunctive relief; and

2        91.    Grant such other and further relief as the Court deems just and proper.

3

4

5        Respectfully submitted,

6        *Joshua R. Stickell*

7

8        Joshua R. Stickell, Esq. (NY SBN # 6254437)
         Rivera Julka Law Group, PC.

9        17 W. Main Street,
         Bay Shore, NY 11706

10       Telephone: (631) 647-9040
         Email: joshua@riverajulka.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Certificate of Compliance with Word Count**

I, Joshua R. Stickell, Esq., counsel for Petitioner, certify that, using the word-count function of Microsoft Word, this filing contains **8,498 words**, excluding the case caption, tables, signature block, and certificates.

The document was prepared in 12-point Times New Roman, double-spaced (except for headings and block quotations).

Dated: February 12, 2025

Bay Shore, New York

Respectfully submitted,

_Joshua R. Stickell_

Joshua R. Stickell, Esq. (NY SBN # 6254437)
Rivera Julka Law Group, PC.
17 W. Main Street,
Bay Shore, New York 11706
Telephone: (631) 647-9040